**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA MCKINNEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-CV-61 RHH** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Melissa McKinney seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano, denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and Supplemental Security Income ("SSI") under Title XVI. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

## I. Background and Procedural History

On July 10, 2023, Plaintiff filed applications for DIB and SSI, alleging she was disabled as of January 1, 2016, due to sleep apnea, fibromyalgia, bipolar disorder, high blood pressure, asthma, knee, hip and back problems, and post-traumatic stress disorder ("PTSD"). (Tr. 75, 82, 208-214) The Social Security Administration ("SSA") denied Plaintiff's claims initially in November 2023, and upon reconsideration in July 2024. (Tr. 74-115) Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 140-145) The SSA granted Plaintiff's request for review and conducted a hearing in January 2025. (Tr. 34-55)

In a decision dated March 17, 2025, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from January 1, 2016, through the date

of this decision." (Tr. 17) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 4-8) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

Plaintiff, born March 13, 1971, testified that she lived alone in a one story dwelling inside her sister's office building. (Tr. 42, 74) Plaintiff testified that she had a grown son and one granddaughter who did not live with her. (Tr. 42-43) With respect to her prior employment, Plaintiff stated that she stopped working in 2016 after being involved in a serious car accident in 2015. (Tr. 41)

Plaintiff testified that she was able to shop[1] and take care of her money. (Tr. 43) She stated she spent much of her days in bed, but tried to get up to visit the restroom.[2] (Tr. 45-46) Plaintiff testified that she often got urinary tract infections, and the medication she took for her bladder issues caused blurred vision. (Tr. 46-47) She indicated she suffered from tremors that make writing and concentration difficult, and further affect her ability to handle small objects. (Tr. 48)

When the ALJ asked how Plaintiff's impairments affected her ability to work, she responded as follows:

> Lower back pain down my—both my legs, in my groin, which is causing incontinence and right now it's just (inaudible)ering, but it's leaking out because they're the bulging to the herniated disc it takes—I mean, it's also bulging into my bowels and so I get—I mean, I can't hardly stand. It's hard to sit. It's hard to walk. It's hard to move. I mean, it's—I'm not comfortable in any position but I'm all the time having to shift or I can't. I can't get comfortable period. I—if I try to sleep, I usually try to [inaudible] legs are under me as I can't and I—I can't sit because if I shift the legs, it goes all

[1] Plaintiff stated she did not drive, and received rides to the store once a month. (Tr. 44)

[2] Plaintiff testified that she often was unable to make it to the restroom in time, and therefore kept a commode by her bedside. (Tr. 46)

> the way down on my left, but my left side, it goes all the way down so above my knee and I mean—the pain is all over, a pain fibromyalgia that just deep, deep joint pain all over.

(Tr. 44) Plaintiff stated she gets shots, possibly epidural steroid injections, in her groin and lower spine area approximately every two weeks. (Tr. 45)

A vocational expert also testified at the hearing. (Tr. 50-54) The ALJ asked the vocational expert to consider a hypothetical individual the same age and education as Plaintiff, with no past relevant work experience, and with the following limitations:

> Further, assume that such an individual can work at a light exertional level as defined in the regulations, with the following additional limitations. Hypothetical individual can occasionally climb ramps and stairs. Never climb ladders, ropes or scaffolds. Occasionally balanced as defined in the DOT/SCO. Occasionally stoop and crawl. Can occasionally reach overhead with the right upper extremity. They should avoid vibration and extreme cold. They should also avoid hazards such as unprotected heights and handling dangerous machinery, and should avoid exposure to concentrated fumes, odors, gases, dust, and core ventilation.

(Tr. 51) The vocational expert stated that such an individual would be able to perform jobs in the national economy, such as mail clerk, cashier, and routing clerk. (Tr. 52) The vocational expert stated that changing the hypothetical to include that the individual could frequently handle, finger and feel with the bilateral hands would not preclude those positions. (*Id.*) With respect to absences and off-task behavior, the vocational expert testified as follows: "[B]ased on my professional experience [] 10% or more off task would be prelusive work. Also, there could be no more than one absence per month occurring no more than 10 times a year in my opinion[;] also arriving late would count as a full absence." (Tr. 54) Finally, the vocational expert stated competitive employment typically would not allow for an accommodation permitting an employee to lay down or be in a reclined position. (*Id.*)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her Statement of Uncontroverted Material Facts, which the Commissioner admitted. (ECF Nos. 10-1, 15-1) The Court also adopts the fact set forth in the Commissioner's Additional Uncontroverted Material Facts, as Plaintiff did not refute it. (ECF No. 15-1) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## III. Standards For Determining Disability Under The Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then

the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § [404.1509 or 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers

the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(g), 416.920(g).

**IV. The ALJ's Decision**

The ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a), and found that Plaintiff: (1) met the insured status requirements of the Social Security Act through December 31, 2021; (2) had not engaged in substantial gainful activity since January 1, 2016, the alleged onset date; and (3) had the severe impairments of degenerative joint disease of the bilateral knees, degenerative disc disease, obesity, fibromyalgia, asthma, and residual effects from a right shoulder repair, that significantly limited her ability to perform basic work activities as required by SSR 85-28. (Tr. 18-19)[3] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-23)

[3] The ALJ found Plaintiff's headaches "are not a severe impairment, in that they do not cause more than a minimal limitation of physical or mental ability to do basic work activities[.]" (Tr. 19) The ALJ further found Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 19-22)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 24) The ALJ described Plaintiff's medical records in detail. As relevant here, the ALJ noted the following pertaining to Plaintiff's Title II claim[4]: (1) at her alleged onset date in January 2016, Plaintiff was noted to have a history of fibromyalgia and herniated disc in her lumbar spine, but her examination was mostly unremarkable (Exh. B1F/133-135); Plaintiff's primary care provider noted a diagnosis of fibromyalgia, but her examinations were mostly unremarkable in July and October 2017 (Exh. B3F/15-20, B3F/32-34); Plaintiff's gait was found normal in November 2017 (Exh. B3F/35-43); Plaintiff reported she "was doing quite well" on Lyrica in October 2018, and her examination was mostly normal (Exh. B3F/81-83); and Plaintiff had normal ranges of motion in her extremities and back and a normal gait during an emergency room visit in May 2020 (Exh. B2F/72-73). (Tr. 24-25) The ALJ concluded as follows:

> After having reviewed the evidence from the alleged onset date through the date last insured, the undersigned finds that the claimant's degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, obesity, and fibromyalgia support a limitation to a light exertional level, and she could never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, balance, stoop, or crawl.

(Tr. 25)

---

[4] In order to be entitled to disability benefits under Title II of the Act, Plaintiff had the burden to show that she was disabled prior to the expiration of her insured status on December 31, 2021. *See* 20 C.F.R. § 404.130; *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). Thus, the relevant time period was from Plaintiff's alleged onset date, January 1, 2016, through December 31, 2021, her insurance expiration date.

The ALJ then continued to state that "[a]s to the Title XVI portion of the claim, evidence was similar."[5] (Tr. 25) As relevant here, the ALJ noted that during a consultative medical examination in May 2024, Plaintiff had 14 positive fibromyalgia tender points, and "a mild reduction of the range of motion of her lumbar spine and shoulders." (Tr. 25) Plaintiff further was able to rise from a seated position with mild difficulty and walk around the room with a slow and antalgic gait, but was unable to heel walk or toe walk. (*Id.*) Plaintiff had moderate difficulty squatting, and her straight leg raising was negative. (*Id*) Plaintiff was found to have 4/5 strength in her lower extremities, and severely diminished sensation to light touch in her left lower extremity. (Tr. 26, citing Exh. B7F).[6]

The ALJ summarized findings from later in 2024 as follows:

> Lumbar x-rays in June 2024, found degenerative disc and facet disease most severe at L4-L5, where there was grade one spondylolisthesis (Exhibit B8F). More lumbar x-rays in August 2024 showed similar findings (Exhibit B10F/121). An MRI of the lumbar spine in September 2024, found edema in the bilateral L5-S1 pedicles and articular facets, a disc extrusion at L5-S1 with compression of the left S1 nerve root and moderate to severe left neural foraminal stenosis, and mild to moderate degenerative changes at other levels (Exhibit B10F/126-127)…An examination [in November 2024] noted she was in some distress, and she had trouble getting on and off the exam table. Her extremities were otherwise normal (Exhibit B11F/5-6).

(Tr. 26) After noting that "[t]his was the extent of evidence during the relevant period for the Title XVI claim for disability", the ALJ concluded as follows:

> [The above evidence] is inconsistent with the alleged severity of symptoms and limitations, such as an inability to sit or walk through the store for half an hour. The undersigned finds that the limitations from the Title II period above continue to accurately address the claimant's impairments.

[5] In order to be entitled to supplemental security income under Title XVI, Plaintiff had to show that she was disabled while her application was pending, *i.e.*, between July 10, 2023 (the date Plaintiff filed her application) and March 17, 2025 (the date of the ALJ's decision). *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335.

[6] The ALJ noted that he considered the above evidence, "although it is only one examination during the period." (Tr. 26)

(*Id.*)

The ALJ then turned to the medical opinions in the record. The ALJ summarized Drs. Charity Sandvos and James Schell's assessments as follows:

> State agency medical consultants, Charity Sandvos, M.D., and James Schell, M.D., provided prior administrative findings in November 2023 and July 2024, respectively, each listing the claimant's osteoarthritis, disorders of the spine, obesity, carpal tunnel syndrome, asthma, and fibromyalgia as "severe" impairments. Dr. Sandvos also listed the claimant's migraines as "non severe" (Exhibits B3A/3; B5A/3; and B7A/5). Dr. Schell later added a headache disorder to his list of "non severe" impairments. He also stated that, for the Title XVI claim, the claimant was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk about 6 hours in an 8-hour day and sit for about 6 hours in an 8-hour day. She could occasionally climb, balance, stoop, and crawl. She could occasionally reach overhead and handle with the right upper extremity. She must avoid concentrated exposure to vibration and hazards (Exhibit B8A/5, 8-9).

(Tr. 26) The ALJ found the doctors' findings "poorly supported", as follows:

> Both consultants stated, in their narrative explanation, that there was insufficient evidence to evaluate the severity of the claimant's impairments, directly contradicting their findings about severity, as well as Dr. Schell's stated limitations (Exhibits B3A/3; B5A/4-5; B7A/4; and B8A/5). However, their findings are generally consistent with some of the objective medical evidence, which is consistent with "severe" impairments. Her BMI was in the 40s, and knee and lumbar imaging confirmed degenerative conditions (Exhibits B1F/121-123, 133-135; B3F/98; B8F; and B10F/126-127). The evidence is also generally consistent with Dr. Schell's stated limitations, except that there was no evidence to indicate limitations on handling. The consultative examination findings noted she had 4+/5 strength in the upper extremities, with intact sensation (Exhibit B7F/11). Nonetheless, for the reasons noted above, these prior administrative findings are not persuasive.

(Tr. 26-27)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform light work, except that:

> [S]he can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance as defined by the DOT and SCO, and occasionally stoop and crawl. She can occasionally reach overhead with the right upper extremity. She must avoid vibration, extreme cold, and hazards such as unprotected heights and handling dangerous machinery. She must avoid exposure to concentrated fumes, odors, gases, dusts, and poor ventilation.

(Tr. 23) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as mail clerk, cashier, and routing clerk. (Tr. 27-28) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of the decision. (Tr. 28)

## V. Discussion

Plaintiff claims the ALJ erred because his RFC finding for the Title XVI period lacks the required function-by-function narrative, and fails to reconcile later worsening lumbar and neurological evidence with light work. (ECF No. 10) Plaintiff claims this error requires remand, as the ALJ's decision is left unsupported by substantial evidence. The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's RFC determination. (ECF No. 15)

### A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's

determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

**B. RFC Determination**

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). *See also Gilmore v. Saul*, No. 1:19CV104 JAR, 2020 WL 5801042, at *3 (E.D. Mo. Sep. 29, 2020) (internal

quotation marks and citation omitted) ("The ALJ is required to consider at least some supporting evidence from a [medical professional] and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace."). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

As noted above, Plaintiff claims the ALJ erred in determining her physical RFC because the finding was not supported by substantial evidence. Specifically, Plaintiff claims the ALJ erred because his RFC finding for the Title XVI period lacks the required function-by-function narrative, and fails to reconcile later worsening lumbar and neurological evidence with light work. (ECF No. 10)

In making his determination, the ALJ factually summarized the evidence of Plaintiff's later medical exams and treatment, but did not discuss or examine how such evidence supported his assessment of light exertional level capability. *Gilmore*, 2020 WL 5801042, at *4. In particular, the ALJ did not provide sufficient analysis supporting his conclusion that said evidence demonstrated Plaintiff had the ability to engage in the activities required for light work with restrictions during the relevant period. *See Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) ("There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday.") Instead, the ALJ merely detailed the medical evidence, and then concluded without explanation that the evidence for the Title XVI claim was similar to the Title II evidence, thus justifying an identical outcome. (Tr. 25) *See also Id.* at 26 (After detailing the extent of evidence during the relevant period for the Title XVI claim for disability, the ALJ concluded that said evidence "is inconsistent with the alleged severity of

symptoms and limitations, such as an inability to sit or walk through the store for half an hour. The undersigned finds that the limitations from the Title II period above continue to accurately address the claimant's impairments.")

As further support for its conclusion, the Court notes the ALJ recognized that both Dr. Sandvos and Dr. Schell stated there was insufficient evidence to evaluate the severity of Plaintiff's impairments. (Tr. 26-27, citing Exhs. B3A/3; B5A/4-5; B7A/4; and B8A/5) Rather than order an updated examination that could consider Plaintiff's later medical evidence, however, the ALJ simply adopted certain of the conclusions set forth in Drs. Sandvos and Schell's medical opinions, including that Plaintiff could sit, stand and/or walk for 6 hours of an 8-hour workday.

An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7. The ALJ did not undergo this process here. In other words, although he thoroughly summarized the medical evidence of record, the ALJ did not justify how he translated his understanding of the medical evidence (relevant to the Title XVI analysis) into a conclusion that Plaintiff could engage in light work with restrictions.

The Court recognizes that an ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality." *Noerper*, 964 F.3d at 746. "Something, however, is needed," *Id.*, as an ALJ may not simply draw his own inferences about a claimant's functional abilities from medical reports. *Combs*, 878 F.3d at 646. "Here, the absence of evidence translating the medical evidence and subjective complaints into functional limitations….leaves [the Court] unable to determine the permissibility of the Commissioner's RFC determination."

*Noerper*, 964 F.3d at 747. *See also Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotation marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

Pursuant to 42 U.S.C. § 405(g), this Court has the power to "affirm[], modify[] or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Upon consideration of the foregoing, the Court will remand this matter to the Commissioner to more fully identify, evaluate and supplement as necessary the medical and nonmedical evidence of record supporting either his original conclusion as to Plaintiff's RFC, or any amended RFC determination he may render.[7]

## VI. Conclusion

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

Dated this 17th day of November, 2026.

RODNEY H. HOLMES

[7] On remand, the ALJ may consider ordering a medical expert to review all the evidence, including the subsequent evidence that was not before the earlier medical experts, and to provide a medical opinion addressing Plaintiff's ability to function in the workplace during the alleged period of disability.